IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Justin Vaughan,                    :

        Plaintiff,                 :

    v.                             :        Case No.  2:16-cv-454

                                   :        JUDGE MICHAEL H. WATSON
Commissioner of Social Security,        Magistrate Judge Kemp

        Defendant.                 :

## REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, Justin Vaughan, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits.  That application was filed on January 18, 2013, and alleged that Plaintiff became disabled on October 26, 2012.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on December 9, 2014.  In a decision dated March 27, 2015, the ALJ denied benefits.  That became the Commissioner's final decision on April 21, 2016, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on August 22, 2016.  Plaintiff filed a statement of specific errors on December 1, 2016.  The Commissioner responded on March 23, 2017.  Plaintiff filed a reply brief on May 9, 2017, and the case is now ready to decide.

### II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 38 years old as of the date of the administrative hearing and who withdrew from high school in the twelfth grade, testified as follows.  His testimony appears at pages 34-59 of the administrative record.

Plaintiff first said that he had not worked since 2013, nor

had he looked for work since then. His past work included being an assistant manager for an auto parts store, a job which required constant standing and walking as well as heavy lifting, and being self-employed framing houses. He then worked at Fast Lube as an assistant manager and at two different apartment complexes doing maintenance and office work.

Next, Plaintiff's back condition was discussed. He had had four back surgeries between 1999 and 2013. He continued to see a doctor in Spokane, Washington, because that was where his workers' compensation claim was pending. He was not currently taking any pain medication. After sitting on an airplane for five hours, his left leg was completely numb and he had pressure and swelling in his back. He was permitted to stand during the flight.

Plaintiff described his back pain as a searing pain in the left side of his back which radiated to his foot and occasionally to his chest and arm. He rated his daily pain level as six or seven out of ten when he was totally inactive. Walking, standing, lifting, and weight-bearing all made it worse, as did physical therapy. He discontinued all medications in 2013 because they were negatively affecting his daily living. He was able to sit if he kept all of his weight on the right side of his body, but he could only do that for about thirty minutes at a time. He could stand for only five to ten minutes and his leg would lock up after walking any distance. Ordinarily, he spent six or seven hours per day lying down.

As far as other physical activities, Plaintiff said he could not bend down to floor level, could kneel if he had something to hold on to, could lift up to twenty pounds rarely, and could carry groceries. He also had pain from a herniated thoracic disc. He was able to drive his daughter to school and did some household chores, but for short periods of time. He could no

longer hunt or water-ski. He had started a work hardening program as well but was unable to complete it due to pain and spasms.

### III. The Medical Records

The pertinent medical records are found beginning at page 244 of the record. They can be summarized as follows.

In January, 2013, Plaintiff underwent back surgery at Providence Sacred Heart Medical Center. He had a recurrent L5-S1 diskectomy and right L3-L4 diskectomy. Only a few weeks later, he suffered injuries when a porch roof collapsed on him. CT scans done at that time were negative for any acute injuries. He was able to walk upon discharge and was given head injury instructions. (Tr. 244-59). When he was seen six weeks post-surgery, he was described as being much improved and in only moderate pain. He did report, however, residual low back pain caused by sitting and increased left leg pain while walking. (Tr. 260-61). Treatment records show that he was being treated for chronic low back pain before the surgery and that surgery was recommended due to a new disc herniation, which may have resulted in his seeking emergency room treatment on October 29, 2012.

Plaintiff continued to report back and leg pain throughout 2013. X-rays taken in May, 2013, showed normal alignment of the spine but disc degeneration at both L4-5 and L5-S1. (Tr. 384). An MRI taken in July, 2013, showed mild to moderate dessication from L3 through S1 and mild congenital narrowing of the spinal canal. Some disc protrusion was noted as well. (Tr. 385-86).

Dr. Rose performed a consultative physical examination on July 24, 2013. Plaintiff reported four back surgeries since 1999 and continuing low back and left leg pain. He said he could walk half a mile, sit for 25 minutes at a time, and stand for 30-45 minutes. Examination did not reveal any specific tenderness but there were limitations in his range of motion. His balance was

-3-

adequate and his gait was normal.  Dr. Rose diagnosed failed back syndrome with multilevel degenerative disc disease as well as foraminal stenosis.  (Tr. 387-89).

Plaintiff also underwent a psychological assessment, which was done by Dr. Higgins on June 29, 2013.  Plaintiff reported depression which interfered with his working, and also was in the process of withdrawing from his pain medication (morphine).  He did not report significant difficulty with activities of daily living but said he could focus for less than five minutes. Plaintiff's affect was euthymic and his memory was intact.  Dr. Higgins diagnosed a pain disorder and opioid dependence and rated Plaintiff's GAF at 54.  She thought he could cope with simple job instructions, could interact appropriately with the public under low-stress conditions, could interact with supervisors and co-workers who were tolerant and sympathetic, and could not deal with changes in a routine work setting.  (Tr. 392-94).

Dr. Julsen, Plaintiff's treating physician, completed a lumbar spine residual functional capacity report on March 13, 2014.  He noted the following symptoms: limited range of motion and tenderness in the lumbar spine and sensory loss and muscle weakness in the left leg.  He also stated that repetitive activity resulted in complete immobility for a week or more unless narcotic pain medications were used.  Dr. Julsen said that Plaintiff's pain increased with prolonged standing or sitting and that he could sit only for an hour and stand for an hour in an eight-hour work day.  He would also need to alternate standing and sitting every ten minutes.  Additionally, Dr. Julsen determined that Plaintiff could not lift more than ten pounds and that Plaintiff's pain would continuously interfere with his attention and concentration.  Lastly, he would have to take work breaks every hour and would miss work three or more times per month.  (Tr. 395-401).  Dr. Julsen essentially repeated these

-4-

findings in a later report.  His attached treatment notes showed, among other things, that Plaintiff was able to complete a two-hour work evaluation but could not get out of bed for two days afterwards.  See, e.g., Tr. 410.  Other records show similar problems from, for example, shopping or going to the mall.

Dr. Julsen was also asked to complete a form dealing with the criteria found in Section 1.04 of the Listing of Impairments. He stated that Plaintiff had a spinal disorder with evidence of nerve root compression accompanied by sensory or reflex loss and also had stenosis resulting in pseudoclaudication and resulting in an inability to ambulate effectively.  He based his opinion on MRI evidence.  (Tr. 438).  That form was submitted to the Appeals Council after the ALJ made his decision.

The record also contains opinions from state agency reviewers.  On the physical side, Dr. Bernardez-Fu reported on August 28, 2013, that Plaintiff could do a range of light work with some postural, manipulative, and environmental limitations, and with standing restricted to four hours per day.  (Tr. 85-87). From a psychological viewpoint, Dr. Comrie said that Plaintiff could understand, remember, carry out, and maintain sufficient attention and concentration to do only simple repetitive tasks, and could sustain brief and superficial interactions with the general public, co-workers, and supervisors as well as respond to minor changes in the work setting.  (Tr. 88-90).

IV.  The Vocational Evidence

Dr. Richard Oestreich was called to testify as a vocational expert at the administrative hearing.  His testimony begins at page 59 of the administrative record.

Dr. Oestreich first testified about Plaintiff's past work. He said that Plaintiff's jobs included retail manager, which is a skilled job usually done at the light exertional level, although, as Plaintiff performed it, it was a medium job.  The property

manager job was light and skilled, but to the extent it entailed maintenance and repair, it was medium and skilled. Finally, the construction worker job was heavy and semi-skilled.

Dr. Oestreich was next asked questions about a hypothetical person with Plaintiff's age, education, and experience who could work at the sedentary exertional level. The person could not climb ladders, ropes, or scaffolds, and could only occasionally climb stairs and ramps, balance, stoop, kneel, crouch or crawl. He or she could reach overhead occasionally and could have frequent exposure to workplace hazards like unprotected heights or dangerous machinery and to cold temperatures or vibration. Lastly, the person could do only simple, repetitive tasks performed in a work setting where changes were infrequent and where the work did not involve more than occasional contact with others. Dr. Oestreich testified that such a person could not do Plaintiff's past work. However, that person could be employed as a hand packer, sorter, or labeler.

Dr. Oestreich was then asked how his response would change if the person also had to change positions every thirty minutes, which would require a few minutes of being off task each time. He said that would not have much impact on the ability to do the jobs he identified. Changing positions every ten minutes would not be tolerated, however, nor would being off task more than 10% of the time.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 12-25 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the special earnings requirement of the Social Security Act at least through the date of the administrative decision. Second, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since his alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, status post lumbar laminectomies, obesity, a somatoform disorder, and a history of a polysubstance abuse disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could work at the sedentary exertional level. However, he could not climb ladders, ropes, or scaffolds, and could only occasionally climb stairs and ramps, balance, stoop, kneel, crouch or crawl. He could reach overhead occasionally and could have frequent exposure to workplace hazards like unprotected heights or dangerous machinery and to cold temperatures or vibration. Also, he could do only simple, repetitive tasks performed in a work setting where changes were infrequent and where the work did not involve more than occasional contact with others. That being so, the ALJ concluded that Plaintiff could not perform his past relevant work. However, relying on the vocational testimony, the ALJ found that Plaintiff could do certain sedentary unskilled jobs including hand packer, sorter, and labeler, and that such jobs existed in significant numbers in the regional economy, the State economy, and the national economy. That finding is inconsistent with a determination of disability. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of errors, Plaintiff raises these issues: (1) the ALJ failed properly to evaluate the issue of whether Plaintiff's back impairment met or equaled the criteria set forth

in Section 1.04 of the Listing of Impairments; (2) the ALJ did
not give proper weight to the opinion of Dr. Julsen, a treating
source; and (3) the ALJ did not properly evaluate Plaintiff's
pain.  These issues are evaluated under the following legal
standard.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary [now the
Commissioner] as to any fact, if supported by substantial
evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere
scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th
Cir. 1976).  The Commissioner's findings of fact must be based
upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435
(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th
Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.
1984).  In determining whether the Commissioner's decision is
supported by substantial evidence, the Court must "'take into
account whatever in the record fairly detracts from its weight.'"
Beavers v. Secretary of Health, Education and Welfare, 577 F.2d
383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,
340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human
Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court
would reach contrary conclusions of fact, the Commissioner's
decision must be affirmed so long as that determination is
supported by substantial evidence.  Kinsella v. Schweiker, 708
F.2d 1058, 1059 (6th Cir. 1983).

A.  Listing Section 1.04

Section 1.04 of the Listing of Impairments reads as follows:

1.04 ***Disorders of the spine*** (e.g., herniated nucleus
pulposus, spinal arachnoiditis, spinal stenosis,

-8-

osteoarthritis, degenerative disc disease, facet
arthritis, vertebral fracture), resulting in compromise
of a nerve root (including the cauda equina) or the
spinal cord. With:

A. Evidence of nerve root compression characterized by
neuro-anatomic distribution of pain, limitation of
motion of the spine, motor loss (atrophy with
associated muscle weakness or muscle weakness)
accompanied by sensory or reflex loss and, if there is
involvement of the lower back, positive straight-leg
raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note
or pathology report of tissue biopsy, or by appropriate
medically acceptable imaging, manifested by severe
burning or painful dysesthesia, resulting in the need
for changes in position or posture more than once every
2 hours;

or

C. Lumbar spinal stenosis resulting in
pseudoclaudication, established by findings on
appropriate medically acceptable imaging, manifested by
chronic nonradicular pain and weakness, and resulting
in inability to ambulate effectively, as defined in
1.00B2b.

The ALJ stated that he considered "all listings" in his
evaluation of Plaintiff's claim, but specifically discussed only
those sections which deal with obesity - which he identified as
Sections 1.00Q, 3.11 and/or 4.00F - and one of the sections
dealing with mental impairments, Section 12.07. (Tr. 15-16). He
did not mention Section 1.04, either in his discussion of the
Listing of Impairments or elsewhere in his decision. Plaintiff
argues that the failure even to mention Section 1.04 is
reversible error. The Commissioner responds that "it is clear
that [the ALJ] considered whether Plaintiff's back impairment met
or medically equaled the listing" because the ALJ discussed

various symptoms stemming from that impairment which are also some of the symptoms described in Section 1.04.  <u>See</u> Doc. 22, at 5.  The Commissioner further asserts that the form filled out by Dr. Julsen and submitted to the Appeals Council is not the kind of "new and material evidence" that would justify a sentence six remand, and that in any event Dr. Julsen's findings were not supported by the MRI to which he cited and do not demonstrate that Plaintiff met the criteria of either Section 1.04(A) or 1.04(C).

In <u>Reiser v. Comm'r of Social Security</u>, 2012 WL 6138987, *6 (S.D. Ohio Dec. 11, 2012), <u>adopted and affirmed</u> 2013 WL 139890 (S.D. Ohio Jan. 10, 2013), this Court extensively discussed the issue of whether remand is required when an ALJ makes no reference to a section of the Listing which is clearly implicated by a claimant's disorder and symptoms.  That case also involved Section 1.04, and, as here, the ALJ made only a passing and conclusory reference to the general section on musculoskeletal disorders, Section 1.00, which the Commissioner nonetheless argued was a "clear" consideration of Section 1.04.  In rejecting that argument, the Court noted that "[t]he Commissioner's position is difficult to reconcile with the Court of Appeals' decision in <u>Reynolds v. Comm'r of Social Security</u>, 424 Fed. Appx. 411 (6th Cir. April 1, 2011)" and that where there is at least a possibility that the evidence is consistent with the claimant's having met or equaled a Listing, a remand was necessary.  Citing to other decisions within this District, the Court also pointed out that it was not "adopting a *per se* rule that every ALJ must discuss in detail any section of the Listing which might conceivably be implicated by the claimant's severe impairments," but rather was holding that when there is evidence in the record to support the claim that a Listing has been met, "[w]hether to credit the evidence which speaks directly to the requirements of Section 1.04, and how to evaluate it in light of those

requirements, is the ALJ's task...." <u>Id</u>. at *7.  <u>Reiser</u> has been
followed by other decisions.  <u>See, e.g., Oglesby v. Comm'r of
Social Security</u>, 2014 WL 3845931 (S.D. Ohio Aug. 5, 2014); <u>cf.
Madden v. Colvin</u>, 2015 WL 3646225, *15 (N.D. Ohio June 10,
2015)(noting that the failure to discuss a particular section of
the Listing may be harmless error where no reasonable fact-finder
could have reached a different conclusion).

Here, despite the Commissioner's argument to the contrary,
Dr. Julsen made findings in the records before the ALJ that could
satisfy Section 1.04(A).  He diagnosed spinal stenosis, which is
one of the qualifying conditions, and said it was accompanied by
radiculopathy, limited range of motion, muscle spasm, and
bilateral sensory loss. (Tr. 402).  The Commissioner acknowledges
that there are records showing positive straight leg raising.
<u>See, e.g.</u>, Tr. 375.  Although there may be contradictory evidence
as well, when the evidence needs to be weighed and evaluated in
light of the requirements of the Listing, that is, as the Court
said in <u>Reiser</u>, the ALJ's task and not the Court's.
Consequently, a remand is required on this issue.

B.  <u>Evaluation of Dr. Julsen's Opinion</u>

Plaintiff's second claim of error is that the ALJ did not
properly evaluate the opinions rendered by Dr. Julsen.  To
analyze this claim, it is necessary to describe in some detail
how the ALJ addressed Dr. Julsen's opinions.

After determining that Plaintiff's report of symptoms was
not entirely credible (which is addressed in the following
section), the ALJ turned to the opinion evidence.  He gave some
weight to the statement from Plaintiff's mother and did not
assign any weight to the report of the consultative examiner, Dr.
Rose, because Dr. Rose did not express any opinions about
functional limitations.  (Tr. 21-22).  Next, after discussing the
psychological evidence (which is not at issue here), he decided
to give "minimal weight" to Dr. Julsen's opinions.  (Tr. 22).

-11-

The ALJ acknowledged the applicable regulation governing the evaluation of a treating source opinion, but determined not to give those opinions controlling weight because (1) the opinions appeared to be based on Plaintiff's own report of symptoms; (2) the objective evidence showed that Plaintiff progressed well after surgery; (3) physical examination findings were essentially normal; (4) and "Dr. Julsen's opinions are inconsistent with the evidence of record as well as the other credible opinion evidence of record." (Tr. 22). The ALJ then gave great weight to the state agency reviewers' opinions because of their qualifications and specific understanding of the Social Security Act and because they were "consistent with the totality of the evidence of record and are supported by the other credible opinion evidence of record." Id.

Plaintiff takes issue with the ALJ's decision for several reasons. He contends that the ALJ incorrectly determined that Dr. Julsen's opinions are not supported by objective testing and are inconsistent with other evidence. He also argues that the ALJ failed to articulate good reasons for his decision as required by the applicable regulation and case law. The Commissioner asserts that Plaintiff simply misunderstood the basis for the ALJ's decision and that any failure to articulate good reasons is harmless error because Dr. Julsen's findings are so patently deficient that no reasonable person could credit them.

Both parties recognize that a treating physician's statement that a claimant is disabled is not determinative of the ultimate issue and that the weight given to such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §404.1527(c). Although there are additional factors to be considered as well when evaluating a treating source opinion, those two factors - supportability and consistency - should be

-12-

analyzed first.  As the Court of Appeals said in <u>Gayheart v.</u>
<u>Comm'r of Social Security</u>, 710 F.3d 365, 376 (6th Cir. 2013),
"these [additional] factors are properly applied only after the
ALJ has determined that a treating-source opinion will not be
given controlling weight."  Further, the ALJ must give good
reasons for the decision not to accord controlling weight to a
treating source opinion.  Failure to articulate the reason for
discounting such an opinion with a level of specificity that
allows the claimant to understand why his physician's views have
not been accepted, and to allow the Court to review the ALJ's
bases for making that decision, is almost always reversible
error.  <u>Rogers v. Comm'r of Social Security</u>, 486 F.3d 234, 242
(6th Cir. 2007); <u>Wilson v. Comm'r of Social Security</u>, 378 F.3d
541, 544 (6th Cir. 2004).

The Court agrees with Plaintiff that these precepts were not
correctly followed by the ALJ.  It is simply not enough to say
that the opinion of a treating source who sees a patient on
numerous occasions and relies on exactly the kinds of tests and
examination findings pertinent to the patient's condition – in
this case, MRI studies, physical examinations, range of motion
studies, straight leg raising tests, and other similar procedures
– is somehow unreliable because the physician's report also
contains statements from the patient about his or her symptoms.
Every treating or examining doctor takes a history from the
patient.  Unless there is an extreme disconnect between the
examination findings and test results, on the one hand, and the
doctor's conclusions about functional limitations, on the other
hand, it is not reasonable to conclude that the doctor relied on
the patient's self-report of symptoms to the exclusion of, or in
contradiction to, the objective medical evidence.  Consequently,
the ALJ's recitation of that conclusion does not, on this record,
constitute a "good reason" for discounting Dr. Julsen's opinions.

Additionally, the ALJ's conclusion to discount those

-13-

opinions because Plaintiff "progressed well" after his fourth
back surgery is not supported by the record.  As Plaintiff points
out, the surgeon's notes show that although the surgery appeared
to be successful in resolving Plaintiff's right leg pain, it did
not alleviate his low back pain, which had worsened during the
months after surgery and which did not respond to physical
therapy.  (Tr. 382).  Those notes also show decreased sensation
in the left leg compared to the right.  (Tr. 383).  It does not
appear that Dr. Julsen based any of the opinions in question on
symptoms which had been taken care of by that particular surgery,
so Plaintiff's progress in that area is irrelevant to an
evaluation of Dr. Julsen's opinions.

Thirdly, the ALJ is not correct in stating that physical
examination findings were essentially normal.  There were normal
findings, to be sure, but each examining source also noted
abnormalities, including the decreased sensation noted by Dr.
Campbell, the decreased range of motion noted by both Dr. Julsen
and Dr. Rose, and noticeable S1 dysfunction shown in Dr. Julsen's
notes.  The ALJ simply appears to have glossed over these
findings in discussing Dr. Julsen's opinions.

Lastly, the ALJ made a blanket statement that Dr. Julsen's
opinions were not consistent with the medical evidence of record
and were also contradicted by other credible opinion evidence.
To the extent that the reference to other medical evidence was
intended to encompass Dr. Julsen's own notes, the Court has
already found that the ALJ did not properly analyze those
records.  To the extent that the comment refers to some other
medical records, it is simply too vague to count as a properly-
articulated reason.  As the Court of Appeals has observed, "it is
not enough to dismiss a treating physician's opinion as
'incompatible' with other evidence of record; there must be some
effort to identify the specific discrepancies and to explain why
it is the treating physician's conclusion that gets the short end

-14-

of the stick." <u>Friend v. Comm'r of Social Security</u>, 375 Fed.
Appx. 543, 552 (6th Cir. Apr. 28, 2010).

There is a similar problem with the ALJ's reference to
"other credible opinion evidence" (Tr. 22). The only other
opinions about Plaintiff's physical condition are the state
agency reviewers' opinions. But an ALJ cannot simply choose the
non-examining physician statements over the ones from a treating
source without having a good reason to do so, and a conflict in
the two is not a good reason. That is, although "a properly
balanced analysis might allow the Commissioner to ultimately
defer more to the opinions of consultative doctors than to those
of treating physicians," <u>see Gayheart, supra</u>, at 379, there has
to be such an analysis. Here, the ALJ credited the non-examining
physicians' opinions because they were consistent with the
"totality" of the medical evidence – again, a statement too
conclusory to be reviewed – and because they were consistent with
the other credible opinion evidence of record, but there was no
other opinion evidence as to Plaintiff's physical condition
except Dr. Julsen's, and the ALJ did not find that credible.
That leaves essentially nothing to support the ALJ's
determination that the state agency reviewers' opinions were
entitled not only to more weight than Dr. Julsen's, but "great"
weight, as opposed to the "minimal" weight assigned to the
treating source opinions.

The Court recognizes, as the Commissioner argues, that
harmless error analysis can apply here. However, when the
failure relates to an improper articulation of reasons to
discredit a treating source opinion, cases of harmless error are
rare. "A violation of the good reasons rule can be deemed to be
'harmless error' if '(1) a treating source's opinion is so
patently deficient that the Commissioner could not possibly
credit it; (2) if the Commissioner adopts the opinion of the
treating source or makes findings consistent with the opinion; or

(3) where the Commissioner has met the goal of § 1527(d)(2) ...
even though she has not complied with the terms of the
regulation.' Friend v. Comm'r of Soc. Sec., 375 Fed.Appx. 543,
551 (6th Cir.2010) (quoting Wilson, 378 F.3d at 547)." Cole v.
Astrue, 661 F.3d 931, 940 (6th Cir. 2011).  This is not one of
those cases.  Dr. Julsen's opinions, or at least some of them,
could have been accepted by a reasonable person.  Consequently,
on remand, the ALJ should also re-evaluate those opinions in
light of the applicable case law and regulations.

### C.  Pain Evaluation

Plaintiff's final argument is that the ALJ did not perform a
proper credibility analysis.  He makes three specific points:
that the objective evidence supports his complaints of pain; that
his activities of daily living were misstated by the ALJ; and
that his attempt to perform work at home was not reasonably
construed.  The Commissioner argues, in turn, that the ALJ
correctly interpreted the record and made an acceptable choice
about how much weight to give Plaintiff's testimony.

Evaluation of a claimant's subjective reports of disabling
pain is subject to a two-part analysis.  First, the Commissioner
should determine if there is objective medical evidence which
confirms the presence of disabling pain.  If not (and there
frequently is not, given that pain is difficult to measure or
quantify, and is experienced differently even by persons with the
same underlying condition), the Commissioner should determine if
the claimant suffers from an objectively-established medical
condition of sufficient severity to permit a reasonable inference
to be drawn that the disabling pain actually exists.  See Duncan
v. Secretary of H.H.S., 801 F.2d 847, 853 (6th Cir. 1986).  This
procedure is reflected in 20 C.F.R. §404.1529(a).

It is important to note that these inquiries are to be
made separately, and that if there is objective evidence of a
sufficiently severe underlying condition, a claimant can prove

-16-

the existence of disabling pain due to that condition through other evidence even if the medical evidence is not helpful in establishing the extent of the claimant's pain. <u>Felisky v. Bowen</u>, 35 F.3d 1027 (6th Cir. 1994). Thus, the Commissioner is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking, but must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). The Commissioner should also give appropriate weight to the opinion of a long-term treating physician as to whether the claimant is accurately reporting or exaggerating the extent to which disabling symptoms exist. <u>Felisky</u>, 35 F.3d at 1040. If the Commissioner summarily rejects the claimant's testimony concerning pain without considering these matters, reversal or remand may be warranted.

The ALJ's credibility discussion in this case is quite extensive. He did cite to the lack of objective evidence to support Plaintiff's complaints, which, as noted above, is somewhat problematic. On the other hand, he correctly noted that Plaintiff told Dr. Campbell that the primary limiting factor of his at-home work effort was limited internet connectivity as opposed to physical inability to do the work. Plaintiff also described a range of daily activities that he could do, and the ALJ recounted them accurately. However, the ALJ may have overstated the impact of Plaintiff's ability to fly to Washington for treatment, not mentioning the fact that Plaintiff had to stand for most of the flight due to back pain, and he also may have given undue weight to Plaintiff's failure to establish a treating relationship with doctors in Ohio, failing to discuss Plaintiff's testimony that he saw a doctor in Spokane because

-17-

that is all that his workers' compensation claim allowed. Overall, the ALJ's discussion of Plaintiff's credibility might not, standing alone, justify a remand, but on remand, the ALJ should revisit this issue, giving due weight to any factors which support the credibility of Plaintiff's statements as well as those which undercut it.

## VII.   Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  _See Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp

United States Magistrate Judge